**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JENNIFER MCLAUGHLIN,                  :
                                      :
    Plaintiff,                        :
                                      :
                                      :        Civil Action
       v.                             :
                                      :        No. 22-3272
WALMART,                              :
                                      :
    Defendant.                        :
                                      :
                                      :

**MEMORANDUM**

**J. Younge**                                              **November 15, 2023**

**I.      INTRODUCTION**

Currently before this Court is Defendant Walmart's Motion for Summary Judgment.

(ECF No. 23.)  The Court finds this Motion appropriate for resolution without oral argument.

Fed. R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth in this Memorandum, Defendant's

Motion for Summary Judgment is Granted.

**II.     FACTUAL BACKGROUND**

Plaintiff Jennifer McLaughlin was originally hired by Defendant Walmart in March 2009

and was employed there until her termination in December 2010.  (Defendant's Statement of

Undisputed Material Facts (hereinafter "SUMF")[1] ¶ 9, ECF No. 23-3.)  Plaintiff was rehired by

Defendant on November 15, 2012 and was employed until her exit interview was completed on

October 14, 2019.  (SUMF ¶ 10, ECF No. 23-3; Defendant's Exhibit T, ECF No. 23-4, p. 145.)

Her two-week notice, conveyed via text exchange to Store Manager Jay Cooper on October 8,

---

[1] Plaintiff did not submit a Response to Defendant's Statement of Undisputed Material Facts.

2019, stated, "I'd like to give a two-week notice, but I can't work it, it's too much on my health. I'll need to stop by and give my keys, say goodbye to everyone." (Plaintiff's Exhibit S, ECF No. 23-4, p. 140.) Notably, Plaintiff had signed an offer letter with another employer, Giant Food Stores, LLC (hereinafter "Giant"), on August 31, 2019 and began working there on October 10, 2019, two days after giving her notice to Defendant and stating that she was unable to work due to her health. (Defendant's Exhibit V, ECF No. 23-4, pp. 152-164.)

Plaintiff experienced an injury to her pelvis on August 14, 2018. (Plaintiff's Answers to Defendant's Interrogatories, ECF No. 29-1, pp. 95-96.) As a result, she contends that she required accommodations to avoid more labor-intensive work and, occasionally, leave pursuant to the Family Medical Leave Act (hereinafter "FMLA"). These requests, she contends, were treated with hostility by her supervisors Mr. Cooper and Co-Manager Tara Cruz-Johns, including admonishments that leaning, rather than standing upright, to alleviate her pelvic pain was "not a good look for our customers," failure to accommodate her disability at the store level, and preemptive statements by Mr. Cooper that her leave requests were denied. (Response to Defendant's Motion for Summary Judgment (hereinafter "Plaintiff's Response"), ECF No. 29, pp. 4-6.) Plaintiff acknowledges that Defendant's third-party leave administrator, Sedgwick, made decisions about leave and accommodation requests and that she knew this. (Plaintiff's Deposition, at 67:7-14, ECF No. 29-1, p. 19.) Indeed, Plaintiff communicated extensively with Sedgwick regarding her requested accommodations, like FMLA leave requests, starting in 2015 and continuing annually as needed. (Defendant's Exhibits H-R, ECF No. 23-4, pp. 100-138.)

On October 3, 2019, Plaintiff submitted a request for an accommodation to Sedgwick that would limit activities like lifting and pulling given her chronic pain. (Defendant's Exhibit O, ECF No. 23-4, pp. 131-32). Six days later, on October 9, 2019, Plaintiff was notified that

Sedgwick had insufficient medical information to evaluate her request for accommodation but

that "[her] accommodation advisor had requested an accommodation leave on [her] behalf."

(Defendant's Exhibit N, ECF No. 23-4, p. 128-29.)   She was also notified on that day that her

request for *personal* leave, *not* pursuant to the FMLA,[2] was being resolved and that she would be

notified of her manager's decision in five days.  (Defendant's Exhibit N, ECF No. 23-4, p. 127.)

Plaintiff had given her two-week notice the day before this but contends that Mr. Cooper had

already told her that this request had been denied.  (Defendant's Exhibit S, ECF No. 23-4, p. 140;

Plaintiff's Deposition, at 126:20-127:2, ECF No. 29-1, p. 34.)  Plaintiff had also requested

FMLA leave to start on October 10, 2019, the same day that she started her position with Giant.

(Defendant's Exhibit, P, ECF No. 23-4, p. 134.)  On October 16 and 17, 2019, Sedgwick

informed Plaintiff that her respective requests – for accommodation and for FMLA leave – were

closed because she was no longer a Walmart employee effective October 14, 2019.  (Defendant's

Exhibits Q & R, ECF No. 23-4, pp. 136-138.)  Sedgwick had insufficient information to make a

determination about her eligibility for FMLA leave as of October 16, 2019.  (Defendant's

Exhibit P, ECF No. 23-4, p. 133.)

---

[2] For the sake of clarity, Sedgwick's records reflect that there had been two leave requests made
in October 2019.  The first was received by Sedgwick on October 9, 2019 for October 9 through
29, 2019 and was identified as a request for "Walmart Personal Leave."  *See* Defendant's Exhibit
N, ECF No. 23-4, p. 127.  All previous FMLA requests had been identified as FMLA requests.
The second request, identified as an FMLA leave request and with a different case number, was
received by Sedgwick on October 16, 2019 with a requested start date of October 10, 2019.  *See*
Defendant's Exhibit P, ECF No. 23-4, p. 134.

Notably, during this same period, Sedgwick and Plaintiff were in the process of resolving a prior
FMLA leave request in September 2019 based on newly-received medical information.  This
request, which had been previously marked as denied, was formally approved on October 15,
2019.  *See* Defendant's Exhibit N, ECF No. 23-4, pp. 124-26.  Though it does not present an
issue of fact preventing summary judgment, numerous intervening conversations between
Plaintiff, Sedgwick, and Mr. Cooper, which were purportedly about the October leave requests,
appear to refer to resolving the September leave request.

Plaintiff filed her initial claim of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") on August 9, 2020.  (Defendant's Exhibit W, ECF No. 23-4, p. 165-174.)  On August 17, 2022, Plaintiff filed her original Complaint against Defendant, alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act (hereinafter "ADA"), retaliation in violation of the Family Medical Leave Act (hereinafter "FMLA"), and intentional interference with the FMLA.  *See* Complaint, ECF No. 1.  Plaintiff filed an Amended Complaint on August 23, 2022.  *See* Am. Compl., ECF No. 2.  Defendant filed its Motion for Summary Judgment on September 21, 2023.  (ECF No. 23-2.)

## III.    LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012).  To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).  A material fact is one that "might affect the outcome of the suit under the governing law[.]"  *Anderson*, 477 U.S. at 248.  A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact.  *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).  When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case."  *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013).  If the movant sustains their initial burden, "the burden shifts to the nonmoving

party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotations omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.    DISCUSSION

   A.    *Plaintiff Has Not Met Her Burden in Establishing That She Was Subjected to Retaliation under the ADA or the FMLA.*

Both the ADA and the FMLA prohibit retaliation against employees who request accommodations, like FMLA leave, for their disabilities. 42 U.S.C. §§ 12101, *et seq.*; 29 U.S.C. §§ 2601, *et seq.*[3] Disability retaliation claims are subject to the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, wherein the plaintiff employee first makes a *prima facie* case of discrimination, the defendant employer then has the burden of showing a legitimate, nondiscriminatory reason for the adverse employment decision and finally, the

---

[3] An FMLA retaliation claim is subject to the same burden-shifting analysis as an ADA retaliation claim, *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 146-47 (3d Cir. 2004), and so this Court will interpret the FMLA retaliation claim in accordance with its disability retaliation analysis.

plaintiff then has the burden of showing that the reason advanced was pretextual.  411 U.S. 792

(1973); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).   A *prima facie* case of retaliation

requires that (1) plaintiff engaged in protected activity, (2) plaintiff was subject to an adverse

employment action "after or contemporaneous with the employee's protected activity," and (3)

there is a causal connection between the protected activity and the adverse action.  *Krouse v.*

*American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

Requests for accommodation, including for FMLA leave, constitute protected activity.

*Sowell v. Kelly Services, Inc.*, 139 F. Supp. 3d 684, 702 (E.D. Pa. 2015); 29 U.S.C. § 2615(a)(2).

The record makes clear that Defendant did not receive a request for FMLA leave until October

16, 2019, two days after Plaintiff's employment had already ended.  *See* Defendant's Exhibit P,

ECF No. 23-4, p. 134.  Conversely, it is undisputed that Plaintiff had submitted a request for a

disability accommodation, satisfying the first prong of the *prima facie* case.  However, Plaintiff

is unable to establish the last two prongs.

Plaintiff cannot show that she was subjected to an adverse employment action, much less

that it was caused by her request for a disability accommodation.  Plaintiff voluntarily resigned

her position on October 8, 2019, five days after requesting an accommodation and prior to any

decision having been made on whether to grant it or not.  In fact, Plaintiff already had a new job

lined up before even requesting an accommodation, having signed an offer letter with Giant over

a month prior, and she began working there on October 10, 2019, two days after giving her two-

week notice.  (Defendant's Exhibit V, ECF No. 23-4, pp. 152-164.)  At the time of separation,

Sedgwick did not yet even have sufficient medical information provided by Plaintiff to make a

determination about the appropriateness of the disability accommodation. [4]  (Defendant's Exhibit

N, ECF No. 23-4, pp. 128-29.)

Plaintiff asks this Court to find that she was terminated, rather than find that she had

voluntarily resigned, because Mr. Cooper allegedly told her that her leave request was listed as

denied[5], she had no paid time off left that she could use for leave should her request be denied,

and Mr. Cooper allegedly told her that "we know what's coming next."  *See* Plaintiff's Response,

ECF No. 29, p. 5.  This, Plaintiff argues, "already provided [her] with the fact that [she's] going

to be terminated." (Plaintiff's Deposition, at 120:14-17, ECF No. 29-1, p. 32.)  Plaintiff's

subjective belief that she was going to be terminated does not, in fact, equate to termination.  To

find that this series of events constitutes an adverse employment action rather than Plaintiff's

own decision to leave her position would go against the established timeline and the weight of

the evidence.

Resignation can constitute an adverse employment action where there was a constructive

discharge, requiring the plaintiff to show that an employer permitted such intolerable

discriminatory employment conditions that a reasonable person would resign.  *Aman v. Cort*

*Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996).  Factors to consider include, but are

not limited to, threats of discharge, demotion, reduction of benefits, alteration of job

responsibilities, and suggestions to resign.  *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159,

1161 (3d Cir. 1993).  This treatment must be even more severe or pervasive than what would be

---

[4] To the extent that Plaintiff's personal leave request, received on October 9, 2019, and FMLA
leave request, received on October 16, 2019, can be considered protected activity, the same
issues present itself.  *See* Defendant's Exhibits N & P, ECF No. 23-4, pp. 127, 134.

[5] Though this does not present an issue of fact that prevents summary judgment, the surrounding
context suggests that this statement may instead refer to the ongoing attempts to resolve the
September leave request, which had been marked as denied until it was officially approved on
October 15, 2019. *See* Defendant's Exhibits N & S, ECF No. 23-4, pp. 124-26, 141.

required to establish a hostile work environment claim, which is already a high bar. *Spencer v.*

*Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006). Here, Plaintiff has alleged that she

was reprimanded during work hours for certain adjustments that would reduce her pain, like

leaning, had been admonished for her performance and for not getting the job done, was not

receiving the same store-level accommodations she had previously received, and had been told

that her personal and FMLA-related leave requests were denied, albeit prematurely. *See*

Plaintiff's Response, ECF No. 29, pp. 4-6. Especially where, as here, Plaintiff had formally

requested an accommodation that would resolve the issues presented and simply needed to wait

for it to be processed, this Court cannot find that the high bar for constructive discharge had been

met.

These same reasons show why Plaintiff would not be able to meet her burden under the

*McDonnell Douglas* framework should this case proceed to trial. If the Court allowed this matter

to go forward, the Defendant would need to provide a legitimate, nondiscriminatory reason for

its adverse employment decision – a decision that had never been made – and Plaintiff would

need to prove that that reason was a pretext for intentional discrimination. *McDonnell Douglas*,

411 U.S. at 804. The fact remains that Plaintiff left on her own and, despite allegedly waiting for

Sedgwick to make a decision regarding her accommodation and leave requests, had already

started working at the job she had accepted a month prior. Accordingly, the Court finds that

Plaintiff has not established a *prima facie* case of retaliation under either the ADA or the FMLA.

      B.      *Plaintiff Has Not Met Her Burden in Establishing That She Was Subjected to*
                *Disability Discrimination in Violation of the ADA.*

Disability discrimination claims brought pursuant to the ADA are analyzed in accordance

with the *McDonnell Douglas* framework. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500

(3d Cir. 1997). A prima facie case of disability discrimination requires the plaintiff to show that

(1) they are a disabled person within the meaning of the ADA; (2) they are otherwise qualified to

perform the essential functions of the job regardless of a reasonable accommodation; and (3)

they suffered an adverse employment action "because of" discrimination. *Turner v. Hershey*

*Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006). As already established, Plaintiff suffered no

adverse employment action in this case.

A discrimination claim based off of a failure to accommodate a disability requires that a

plaintiff show that (1) the defendant knew about the disability; (2) the plaintiff had requested an

accommodation for that disability; (3) the defendant did not make a good faith effort in assisting

the plaintiff in obtaining an accommodation; and (4) the plaintiff could have been reasonably

accommodated for that disability if not for defendant's lack of good faith. *Isley v. Aker Phila.*

*Shipyard, Inc.*, 275 F. Supp. 3d 620, 630 (E.D. Pa. 2017). A failure to accommodate claim must

be brought within 300 days of the alleged unlawful practice or else be time-barred. *See* 42

U.S.C. § 12117; 42 U.S.C. § 2000e-5e(1); *Zankel v. Temple Univ.*, 245 F. App'x 196, 198 (3d

Cir. 2007).

As Plaintiff did not file this claim with the EEOC until August 9, 2020, this Court finds

that any alleged unlawful acts committed prior to October 14, 2019 (300 days prior) are time-

barred. Plaintiff's last, and only, formally requested accommodation was made on October 3,

2019 and she was informed, on October 16, 2019, that this request was closed because she had

separated from her employment before it could be processed. *See* Defendant's Exhibits O & Q,

ECF No. 23-4, pp. 131-32, 136. Plaintiff argues that this October 3rd request to Sedgwick, the

first made to the entity that is in charge of officially granting accommodations, should be

considered together with Plaintiff's informal requests to her managers for accommodations as

part of a continuing violation. Her managers' decision to rely on Sedgwick's accommodation

system rather than grant an informal store-level accommodation does not amount to a failure to

accommodate and cannot be considered as part of any continuing violation.  Plaintiff's claim of

disability discrimination accordingly fails.

        C.        *Plaintiff Has Not Met Her Burden in Establishing That She Was Subjected to Intentional Interference in Violation of the FMLA.*

Plaintiff cannot establish a cause of action for intentional interference with the FMLA

because she voluntarily left her employment before Defendant could consider her requested

accommodation.  A claim of interference under the FMLA requires that the plaintiff show that

(1) plaintiff was an eligible employee under the FMLA; (2) defendant was an employer subject

to the FMLA's requirements; (3) plaintiff was entitled to FMLA leave; (4) plaintiff gave notice

of their intention to take such leave; and (5) plaintiff was denied the benefits they were entitled

to under the FMLA.  *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014).  An interference

claim must show both that the plaintiff was entitled to FMLA benefits and that they were denied

them.  *Sommer v. The Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006).  Such an interference

claim is not considered to be about discrimination.  *Id.*  It is undisputed that Defendant is an

employer subject to the FMLA's requirements and that Plaintiff gave notice of, at least, her

intention to take FMLA leave should it be granted.

Plaintiff alleges that Defendant intentionally interfered with the exercise of her rights

under the FMLA when Mr. Cooper told her that her leave request had been denied, even though

Plaintiff was receiving correspondence related to, and actively in conversation with Sedgwick

about, her leave requests.  *See* Defendant's Exhibits N & S, ECF No. 23-4, pp. 127-29, 141.

Plaintiff gave notice of her resignation eight days before Sedgwick received her request for

FMLA leave, and her employment with Defendant officially ended two days before Sedgwick

received her request.  Plaintiff was intimately familiar with the processing of FMLA leave

requests, having interfaced with Sedgwick regarding previous requests from 2015 onwards, and knew that Sedgwick would require both the submission of medical information and time to assess her claim, neither of which they had.  *See* Defendant's Exhibits H-R, ECF No. 23-4, pp. 100-138.  In reality, Defendant did not even have the opportunity to deny her the benefits she was allegedly entitled to by virtue of her disability.

Only eligible employees are entitled to protection from interference under the FMLA, and a determination of eligibility must be made "as of the date the FMLA leave is to start."  29 C.F.R. § 825.110(d); *see also Mascioli v. Arby's Restaurant Group, Inc.*, 610 F. Supp. 2d 419, 431-32 (W.D. Pa. 2009) (finding that termination prior to the time FMLA leave would start, and thus prior to being an eligible employee, would not constitute intentional interference with the FMLA because the employer-employee relationship had been severed prior to any alleged discouragement against taking the leave).  Here, Plaintiff cannot show that the Defendant interfered with her taking leave because (1) it had not yet made a decision about whether she was eligible for such leave prior to Plaintiff leaving her position and (2) it, consequently, could not have then interfered with her right to take it.  By voluntarily leaving her position, Plaintiff severed the employer-employee relationship and her accompanying rights to FMLA leave from Defendant.  Therefore, Plaintiff's interference claim fails.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is Granted.

An appropriate Order follows.

**IT IS SO ORDERED.**

BY THE COURT:

/s/ John Milton Younge
**Judge John Milton Younge**